(No. 11296.—Decree affirmed.)

MARY A. CONDON, Appellee, *vs.* THE VILLAGE OF FOREST PARK *et al.* Appellants.

*Opinion filed April 19, 1917.*

1. MUNICIPAL CORPORATIONS—*a municipality has no inherent power to require a license fee for conducting a business.* A municipal corporation has no inherent power to levy a tax by requiring a license to conduct any business or occupation, but the authority to exercise such power must be expressly granted by the General Assembly or be necessarily implied for the effective execution of some power so granted, and if there is any reasonable doubt as to the extent of the power it must be resolved against the municipality.

2. SAME—*paragraph 41 of section 1 of article 5 of Cities and Villages act authorizes exercise of police power by means of a license.* By paragraph 41 of section 1 of article 5 of the Cities and Villages act the General Assembly combined the power to regulate, suppress and prohibit, which arises out of the police power, with the separate and distinct power to tax the objects and subjects therein mentioned, and authorized a municipality to exercise either power by means of requiring a license.

3. SAME—*license fee exacted in exercise of taxing power is tax.* A license fee exacted in the exercise of the taxing power, under paragraph 41 of section 1 of article 5 of the Cities and Villages act, is a tax, notwithstanding the statement sometimes made that a license fee exacted for the purpose of revenue is not a tax, as such statement must be understood as meaning that the license fee is not a tax in the sense of the property tax authorized by the constitution, which must be levied according to valuation.

4. SAME—*police power extends to the protection of the public welfare.* The police power of the State extends to the protection of the lives, health, comfort and quiet of all persons and the protection of all property within the State, and in the exercise of that power the General Assembly may authorize a municipality to sup-

press, license for the purpose of regulating, or prohibit any practice, trade or business endangering the public welfare.

5. SAME—*the courts must decide whether an exercise of police power is reasonably necessary.*  It is for the courts to determine whether an attempted exercise of the police power is reasonably necessary to the public welfare, as such power is restricted by those provisions of the constitution which forbid unequal laws or an arbitrary invasion of personal rights of property, and if it is manifest that a statute or ordinance is really an invasion of property rights under the guise of a police regulation it is the duty of the courts to declare it void.

6. SAME—*the game of golf is a harmless recreation and not subject to the exercise of the police power.*  The game of golf is a healthful and harmless recreation of the same class as lawn tennis, hockey and other like games which do not attract crowds or tend to disorder or call for police supervision, and the fact that the game has attractions which induce persons to play it does not make it a public amusement which a municipality, under the police power, may regulate by requiring the owner of the grounds where it is played to take out a license, even though a fee is charged, directly or indirectly, for the use of the grounds.

7. SAME—*license fee must bear reasonable relation to additional burdens imposed on the business licensed and to expense of police supervision.*  The authoity of a municipality, in the exercise of the police power for the purpose of regulation, is limited to such a charge for a license as will bear some reasonable relation to the additional burdens imposed by the business or occupation licensed and the necessary expense involved in police supervision.

8. SAME—*a lawful occupation which is subject to taxation may be prohibited if not licensed.*  The method of levying a tax, aside from a tax on property according to valuation, is a matter of form and not of substance, and where a tax may lawfully be levied on an occupation by requiring the payment of a license fee fixed by the General Assembly or the municipality authorized to levy the tax, such an occupation, though lawful in itself, may be prohibited unless licensed, in order to compel the taking out of a license.

APPEAL from the Circuit Court of Cook county; the Hon. JESSE A. BALDWIN, Judge, presiding.

FRANK S. RIGHEIMER, for appellants.

JUDAH, WILLARD, WOLF & REICHMANN, for appellee.

Mr. JUSTICE CARTWRIGHT delivered the opinion of the court:

On August 8, 1916, the council of the village of Forest Park passed the following ordinance:

*"Be it ordained by the council of the village of Forest Park.*

"Section 1. Hereafter no person, firm or corporation shall conduct or control golf grounds or links to which grounds an admission fee is charged directly or indirectly, or where a fee is charged for the use of said grounds or for the privilege of playing thereon, until said person, firm or corporation shall first have procured from the village of Forest Park a license for said purpose.

"Sec. 2. No license shall issue for said purpose until application has been made therefor, which application shall state the name of the owner of the property, also the name of the lessee thereof if said property is managed by a lessee, or if said property is in the possession of a club, association or corporation, the names of the officers of said club, association or corporation. And after said application shall be approved by the council of the village of Forest Park a license shall be issued to the applicant upon the payment of a fee of seven hundred and fifty ($750) dollars for the license period, which shall commence on the first day of May and end on the 30th day of April next succeeding.

"Sec. 3. Any person, firm or corporation failing to comply with the provisions of this ordinance shall be fined not to exceed one hundred dollars, ($100,) and each day on which any persons, firm or corporation shall permit said grounds to be used for the purpose of playing golf and shall charge a fee for the privilege of using said grounds shall constitute a separate and distinct offense.

"Sec. 4. This ordinance shall be in full force and effect from and after its passage and publication according to law."

The appellee, Mary A. Condon, in her own right and as executrix of the last will and testament of John Condon, deceased, filed in the circuit court of Cook county her bill of complaint in this case against the village of Forest Park and the mayor and chief of police, alleging that her husband, John Condon, at the time of his death was the owner of the tracts of land therein described and had laid out a golf course thereon where many persons were accustomed to play the game of golf; that for the convenience of the players he caused lockers, dressing rooms and shower baths to be constructed, which, with the laying out of the course and equipment, involved a considerable expenditure of money; that an admission fee of fifty cents a day was charged on week days and one dollar on Sundays, and numbers of persons who could not afford to join golf clubs availed themselves of the privilege of playing upon the grounds; that he had built up a considerable patronage of persons who attended the golf course as patrons of the game; that he died on August 9, 1915, leaving a last will and testament, of which the complainant was executrix and under which she was a beneficiary, and that she was conducting the business, and no amusement or recreation except the game of golf was conducted or permitted on the premises. The bill charged that the game of golf is a well known recreation, beneficial to the health of the players, and was carried on in a quiet manner, calling for no police or other expenditure on the part of the village, and prayed that the ordinance should be found and adjudged to be null and void and the village and its officers enjoined from attempting to enforce it. The defendants demurred to the bill, and the demurrer being overruled they refused to make further answer, whereupon the bill was taken as confessed and the defendants were perpetually enjoined from enforcing the ordinance. The court certified that the validity of the municipal ordinance was involved and the public inter-

est required an appeal directly to this court, and such appeal was allowed and perfected.

A municipal corporation exercises only delegated powers, and has no inherent power to levy a tax by requiring a license or otherwise or to exact a license fee for conducting any business or occupation. The legislative power is vested in the General Assembly, and such power as it may lawfully exercise it may delegate to municipalities for the government and regulation of local affairs, but the authority to exercise any power or to pass any ordinance must be found in some act of the General Assembly by which the authority is either expressly given or necessarily implied for the proper and effective execution of some power expressly granted. If there is any fair and reasonable doubt as to the extent of power so delegated the doubt must be resolved against the municipality claiming the right to exercise it and the power held not to exist. *Wilkie* v. *City of Chicago,* 188 Ill. 444; *City of Chicago* v. *M. & M. Hotel Co.* 248 id. 264; *City of Chicago* v. *Ross,* 257 id. 76; *People* v. *City of Chicago,* 261 id. 16; *City of Chicago* v. *Mandel Bros.* 264 id. 206.

Section 1 of article 5 of the Cities and Villages act enumerates the general powers of the city council, and it is claimed by the village of Forest Park that power to pass the ordinance in question was delegated to it by paragraph 41 of that section, as follows: "To license, tax, regulate, suppress and prohibit hawkers, peddlers, pawnbrokers, keepers of ordinaries, theatricals and other exhibitions, shows and amusements, and to revoke such license at pleasure." The General Assembly by that paragraph combined the power to regulate, suppress and prohibit which arises out of the police power, with the separate and distinct power to tax the objects and subjects therein mentioned, and authorized a municipality to exercise either power by means of a license. It has been so regarded by the court. (*United States Distilling Co.* v. *City of Chi-*

*cago,* 112 Ill. 19; *Banta* v. *City of Chicago,* 172 id. 204; *Price* v. *People,* 193 id. 114; *Bessette* v. *People,* id. 334; *Harder's Storage Co.* v. *City of Chicago,* 235 id. 58; *Metropolis Theatre Co.* v. *City of Chicago,* 246 id. 20.) Although it has sometimes been said that a license fee exacted for the purpose of revenue is not a tax, such statement must be understood as meaning that it is not a tax in the sense of the property tax authorized by the constitution, which must be levied according to valuation, since it is a tax and is levied by virtue of paragraph 41. The question here is whether this ordinance is valid either as an exercise of the police power or the power of taxation granted to municipalities by the paragraph in question.

The police power of the State extends to the protection of the lives, health, comfort and quiet of all persons and the protection of all property within the State. In the exercise of that power the General Assembly may suppress and prohibit any practice, trade or business endangering the public welfare and safety or may regulate any business in such manner as may be necessary for the safety, morals and welfare of the people and may delegate that power to municipalities. It is for the courts to determine what are the subjects for the exercise of the police power and to determine whether an attempted exercise of the power in a particular instance is reasonably necessary to the comfort, morals, safety or welfare of the community, and the power is restricted by those provisions of the constitution which forbid unequal laws or an arbitrary invasion of personal rights of property. To sustain an act or ordinance under the police power the court must be able to see that it tends in some degree to the prevention of offenses or the preservation of the public health, morals, safety or welfare. If it is manifest that a statute or ordinance has no such object but under the guise of a police regulation is an invasion of the property rights of the individual it is the duty of the court to declare it void. (*City of Chicago*

v. *Netcher,* 183 Ill. 104; *Nahser* v. *City of Chicago,* 271 id. 288; *City of Chicago* v. *Drake Hotel Co.* 274 id. 408.) The owner of property has a constitutional right to make any use of it he desires, so long as he does not endanger or threaten the safety, health, comfort or general welfare of the people. (*Ruhstrat* v. *People,* 185 Ill. 133; *Bailey* v. *People,* 190 id. 28; *Bessette* v. *People, supra; People* v. *City of Chicago, supra.*) Under the police power, things which are injurious to the public may be suppressed and prohibited, and other things which may or may not be injurious to the public, according to the manner in which they are managed, conducted and regulated, may be licensed for the purpose of regulation. Races, whether of persons, automobiles or other machines or animals, baseball games, and the like, which are conducted as public amusements, require police supervision, and, being proper subjects for police regulation, licenses for them may lawfully be required. Public dances and dance halls may be conducted in such a manner as to afford opportunity for innocent amusement, but in the absence of regulation tend to create disorder and immorality and are proper subjects for the exercise of the police power. (*Commonwealth* v. *Quinn,* 164 Mass. 11; *Mehlos* v. *City of Milwaukee,* 156 Wis. 591; 37 Ann. Cas. 1102.) A merry-go-round is a public amusement to which the public is invited to ride on wooden horses, and, being a public meeting place, it requires police supervision and is a proper subject for the requirement of a license. (*Commonwealth* v. *Bow,* 177 Mass. 347.) The game of golf is a healthful and harmless recreation of the same class as lawn tennis and other like games, which do not attract crowds or tend to disorder or call for police supervision or regulation. It has never been known to affect in any injurious way the public health, order, safety or morals. The fact that the game has attractions which induce players to practice it does not change its character to an amusement or entertainment pro-

vided for the public.   It is not a subject for the exercise of the police power. .

Another rule of law is, that in the exercise of the police power for the purpose of regulation the authority of a municipality is limited to such a charge for a license as will bear some reasonable relation to the additional burdens imposed by the business or occupation licensed and the necessary expense involved in police supervision.   (*Metropolis Theatre Co.* v. *City of Chicago, supra;* Cooley's Const. Lim. 201.)   Since the game of golf cannot injuriously affect the public health, safety, morals or the public order, and the license provided for by the ordinance is not to secure the observance of any law or ordinance affecting either, a fee of $750 could not be justified for the purpose of regulation.

The taxing power is necessary to the existence of government and is an incident of sovereignty.   It is vested in the General Assembly and may be exercised by it subject only to the restrictions of the. constitution.   Section 1 of article 9 of the constitution provides that a tax upon property shall be levied according to valuation, so that every person and corporation shall pay a tax in proportion to the value of his, her or its property, but authorizes the General Assembly to tax peddlers, auctioneers, hawkers, merchants, commission merchants, showmen, jugglers, inn-keepers, grocery keepers, liquor dealers, toll bridges, ferries, insurance, telegraph and express interests or business, vendors of patents and persons or .corporations owning or using franchises or privileges, in such manner as it shall from time to time direct by general law, uniform as to the class upon which it operates.   Section 2 of the article provides that the above specification of the objects and subjects of taxation shall not deprive the General Assembly of the power to require other subjects or objects to be taxed in such manner as may be consistent with the principles of

278 – 15

taxation fixed in the constitution. By the latter section power is preserved to the General Assembly to tax other subjects and objects than those specified if the taxation is in harmony with the principles of the constitution. The method of levying a tax, aside from a tax on property according to valuation, is a matter of form and not of substance, and the tax may be levied by requiring the payment of a license fee fixed by the General Assembly or the municipality authorized to levy the tax, and an occupation which is lawful in itself but subject to taxation may be prohibited unless licensed, in order to compel the taking out of a license. If it is within the power of the General Assembly to impose a tax by way of license on the business of having or conducting a golf course by an individual, club, association or corporation, uniform upon all of the class, as required by the constitution, the final question is whether the General Assembly intended to confer such power upon cities and villages by paragraph 41. We have seen that golf is not an amusement in fact, within the meaning of that paragraph, and it cannot be included under the settled rule of construction adopted for the purpose of ascertaining the legislative intent. The paragraph specifies theatricals, followed by the words "and other exhibitions, shows and amusements," and in such a case the general words of description are limited to things of the same class or nature as those specified. Golf, lawn tennis, hockey and other like games bear no likeness to public shows and amusements of the same nature as theatricals, and therefore it cannot be said that the legislative intent was to include them as subjects or objects of taxation.

The decree is affirmed.                    *Decree affirmed.*