BUSINESS DEVELOPMENT SERVICES, INC., Plaintiff-Appellant, *v.*
FIELD CONTAINER CORPORATION, Defendant-Appellee.

First District (5th Division)    No. 80-1382

Opinion filed May 22, 1981.

Ira J. Bornstein, of Chicago (Barnett & Beigel, Ltd., of counsel), for appellant.

Robert Y. Sperling and Howard J. Stein, both of Katten, Muchin, Zavis, Pearl & Galler, of Chicago, for appellee.

Mr. JUSTICE MEJDA delivered the opinion of the court:

This is an appeal from the trial court order which granted defendant's motion to dismiss plaintiff's amended complaint. The issues presented for review are: (1) whether the amended complaint states a cause of action; (2) whether the contractual two-year time limitation is applicable; (3) whether defendant waived the two-year limitation; (4) whether count II states a cause of action for breach of an oral contract; (5) whether plaintiff is entitled to recover under *quantum meruit.*

The amended complaint contains the following pertinent allegations:

Count I: In June, 1976, plaintiff, a business finder, was employed by defendant to introduce defendant to Folding Cartons, Inc. (Folding), in order to effectuate defendant's acquisition of Folding. On August 19, 1976, this employment agreement was memorialized in writing. Pursuant to this agreement, plaintiff introduced defendant to Folding, and negotiations between the latter two parties proceeded through December 1976, when negotiations ended. Plaintiff maintained continuous contact with Folding and, in December 1977, was informed that Folding was withdrawing from the market until an undetermined future date.

During January and February 1978, plaintiff continued its efforts on behalf of defendant and determined that due to Folding's financial position, negotiations for the acquisition would be improvident prior to the fall of 1978.

On April 4, 1978, a meeting was had between plaintiff and defendant, at which time plaintiff counselled a delay of approximately six months before defendant should recommence negotiations with Folding. At that time defendant requested and directed that plaintiff continue its performance of procuring, on defendant's behalf, the acquisition of Folding regardless of the time limitation in the agreement. Defendant therefore waived the two-year limitation. Pursuant to defendant's requests, direction, acts and conduct, plaintiff was induced to so continue.

Plaintiff maintained contact with Folding on defendant's behalf from

April through October 1978. On October 19, 1978, negotiations for the acquisition of Folding by defendant were recommenced and continued through December 1978. On December 14, 1978, an agreement was executed for defendant's acquisition of Folding, which was closed on February 1, 1979, at a cost of $1,600,000 plus inventory and realty.

Count II: Plaintiff, in the alternative, alleges the initial agreement and a new verbal agreement on April 4, 1978. Defendant therein agreed to pay plaintiff the same commission set forth in the prior written agreement in consideration for plaintiff's using its best efforts to effectuate and procure the acquisition of Folding by defendant. Plaintiff also alleged that it fully rendered all services in conformity with the oral agreement of April 4, 1978.

Count III: Plaintiff alleges that between June 1976 and October 1978 it performed services at defendant's specific instance, request and direction to effect the acquisition of Folding by defendant. These services included, but were not limited to, the introduction of defendant to Folding, maintaining continuous negotiations and contact with defendant and Folding, and counselling defendant as to the proper time to approach Folding. Plaintiff claims that the reasonable value of its services is $74,000, which defendant has refused to pay.

In each count plaintiff prays judgment against defendant for $74,000, plus such further amount as may be determined to be due as a result of the purchase and sale, plus interest and costs.

Defendant filed a motion to dismiss the amended complaint as insufficient at law pursuant to sections 45 and 48 of the Illinois Civil Practice Act (Ill. Rev. Stat. 1977, ch. 110, pars. 45 and 48). Plaintiff filed a response. The court granted the motion by an order which stated that plaintiff has not stated and cannot state any set of facts that would constitute a cause of action. This appeal followed.

OPINION

I

■■ A motion to dismiss admits all facts well pleaded and the reasonable inferences which may be drawn therefrom are taken as true for the purposes of the motion. (*Horwath v. Parker* (1979), 72 Ill. App. 3d 128, 390 N.E.2d 72; *Giers v. Anten* (1978), 68 Ill. App. 3d 535, 386 N.E.2d 82.) The attached exhibits are an integral part of the complaint and must be so considered. (*Fowley v. Braden* (1954), 4 Ill. 2d 355, 122 N.E.2d 559.) A reviewing court should interpret the facts alleged in the complaint in the light most favorable to the plaintiffs. (*Farns Associates Inc. v. Sternback* (1979), 77 Ill. App. 3d 249, 395 N.E.2d 1103; *Cipolla v. Bloom Township*

*High School Dist. No. 206* (1979), 69 Ill. App. 3d 434, 388 N.E.2d 31.) Additionally, the complaint should not be dismissed unless the pleadings disclose that no set of facts could be proved that will entitle the plaintiff to relief. (*Agee v. First National Bank* (1979), 68 Ill. App. 3d 794, 386 N.E.2d 899; *Patton v. T.O.F.C., Inc.* (1979), 79 Ill. App. 3d 94, 398 N.E.2d 313.) In sum, the pleadings are to be liberally construed with the view of doing substantial justice between the parties. Ill. Rev. Stat. 1977, ch. 110, par. 33(3).

## II

Plaintiff first contends that the two-year time limitation set forth in paragraph 3 of the parties' agreement is inapplicable to the present controversy. That paragraph provides:

"3. In the event BDS introduces Folding Cartons, Inc. to Principal and Principal concludes an agreement relating to purchase or exchange of a business interest or in the event a new or different business relationship is concluded involving Principal (or anyone who is an owner of Principal on the date of such introduction) and such prospect at any time within a period of 2 years from the date hereof, BDS shall be paid the compensation provided in paragraph 4 herein."

Plaintiff argues that applying the "last antecedent clause rule" of contract construction which provides that a qualifying phrase is confined to the last antecedent (*Storybook Homes, Inc. v. Carlson* (1974), 19 Ill. App. 3d 579, 312 N.E.2d 27), it is clear that the two-year limitation applies only to the clause immediately preceding it (namely, in the event a new and different relationship is concluded involving the principal and such prospect) and not the first clause. In addition, plaintiff maintains that the rule of grammatical construction should be followed. (*Dick v. Goldberg* (1920), 295 Ill. 86, 128 N.E. 723.) It argues that the two subordinate clauses in paragraph 3 of their agreement are adverbial clauses, modifying the verb "paid" in the main clause, and that each of the subordinate clauses can be joined with the main clause to form a sentence, to-wit:

"In the event BDS introduces Folding Cartons, Inc. to Principal and Principal concludes an agreement relating to purchase or exchange of a business interest, BDS shall be paid the compensation provided in paragraph 4 herein."

"In the event a new or different business relationship is concluded involving Principal (or anyone who is an owner of Principal on the date of such introduction) and such prospect at any time within a period of 2 years from the date hereof, BDS shall be paid the compensation provided in paragraph 4 herein."

Plaintiff asserts that the foregoing sentences illustrate that the time limitation was applicable only in the event defendant concluded a new or different business relationship and that since defendant purchased Folding only the former sentence is relevant to the present litigation.

Defendant submits that since this theory was not advanced at the trial level, it cannot be raised on appeal. Nevertheless, defendant maintains that the clause "at any time within a period of 2 years from the date hereof," modified both clauses. It argues that plaintiff presents no "explanation why the parties would have intended a distinction between the time limitation of both clauses and that plaintiff's construction would permit plaintiff to be paid a commission at any time in the future, no matter how remote, so long as an agreement relating to purchase or exchange" was concluded between defendant and Folding. Plaintiff responds that the applicability of the time limitation involves a question of law and that since the cause was decided on its pleadings and because additional testimony would not alter the situation, the appellate court may properly consider this issue.

■■ While it is generally true that an appellate court should not consider different theories or new questions if proof might have been offered to refute or overcome them had they been presented at trial (*Wright v. County of Winnebago* (1979), 73 Ill. App. 3d 337, 391 N.E.2d 772; see also *Greater Chicago Indoor Tennis Clubs, Inc. v. Village of Willowbrook* (1976), 63 Ill. 2d 400, 349 N.E.2d 3), in the instant case no evidence was taken and the cause was decided upon the pleadings. An identical situation was presented in *People ex rel. Sterba v. Blaser* (1975), 33 Ill. App. 3d 1, 337 N.E.2d 410. There the plaintiff filed a *mandamus* action seeking reinstatement of his position with the Illinois Environmental Protection Agency. Defendant for the first time on appeal questions whether *mandamus* was a proper legal remedy. That court noted that:

"[I]n the case before us, no evidence was taken and the cause was decided upon the pleadings and affidavits of the respective parties. These additional issues raised by defendants involve only matters of law which have been briefed and argued by both sides. Neither additional affidavits nor testimony would change the situation. [Citations.] Under these circumstances, in the case at bar, we prefer to consider the points thus raised." (33 Ill. App. 3d 1, 9, 337 N.E.2d 410, 416; see also *Hux v. Raben* (1967), 38 Ill. 2d 223, 230 N.E.2d 831.)

Accordingly, we will consider plaintiff's contention.

■■ In construing a contract, the paramount objective is to ascertain the intent of the parties. (*Farwell Construction Co. v. Ticktin* (1980), 84 Ill. App. 3d 791, 405 N.E.2d 1051; *Standard Steel & Wire Corp. v. Chicago Capitol Corp.* (1975), 26 Ill. App. 3d 915, 326 N.E.2d 33.) The intention of

the parties must be ascertained, if possible, from the language employed in the instrument itself and when there is no ambiguity from such language alone. (*Gardiakos v. Vanguard Communications, Inc.* (1976), 38 Ill. App. 3d 937, 350 N.E.2d 210; *Industrial Commodity Corp. v. E. J. Brach & Sons* (1968), 92 Ill. App. 2d 163, 235 N.E.2d 857.) It is well settled that where a contract is susceptible of two constructions, " 'one of which makes it fair, customary and such as prudent men would naturally execute, while the other makes it inequitable, unusual, or such as reasonable men would not likely enter into, the interpretation which makes a rational and probable agreement must be preferred.' " (*Camp v. Hollis* (1947), 332 Ill. App. 60, 68, 74 N.E.2d 31, 35; see also *Board of Education v. Chicago Teachers Union, Local 1* (1980), 89 Ill. App. 3d 861, 412 N.E.2d 587.) In this regard, an ambiguous contract will be construed most strongly against the party who drafted it. (*Parker v. Arthur Murray, Inc.* (1973), 10 Ill. App. 3d 1000, 295 N.E.2d 487; *Ellerman v. Clark Products, Inc.* (1978), 67 Ill. App. 3d 848, 384 N.E.2d 940.) Furthermore, the construction or interpretation of a clause in a contract is a question of law to be determined by a reviewing court unrestrained by the trial court's judgment. *Farwell Construction Co. v. Ticktin.*

■■ In the instant case plaintiff drafted the contract between the parties. Paragraph 3 of their agreement (as previously quoted) defines the terms upon which compensation would be paid. While arguably this paragraph may be susceptible of two constructions, a fair reading of the paragraph dictates that the two-year limitation was intended to modify both clauses. To hold otherwise would require this court to construe the parties' agreement to provide that defendant compensate the plaintiff, at any time in the future, no matter how remote, whenever an agreement for the purchase or exchange may be concluded. Plaintiff alleges in count I that the negotiations between defendant and Folding temporarily ended in December 1976. Under plaintiff's interpretation of paragraph 3, had the negotiations not been resumed, or an agreement not concluded for 10 years, it still would be entitled to compensation from defendant. Such an interpretation would be unusual and not one likely to be entered into by reasonable men. (See *Camp v. Hollis.*) The more rational and probable interpretation of this agreement would be to read the two-year limitation to apply to both of the subordinate clauses. Under this interpretation plaintiff would be entitled to compensation for services rendered on behalf of defendant in securing the assets or stock of Folding notwithstanding the form of such acquisition so long as such acquisition occurred within two years. Reading paragraph 3 in light of the parties' entire agreement indicates that the two subordinate clauses were included for plaintiff's protection in the event that defendant acquired a "business relationship" with Folding that fell short of a purchase of Folding's assets

or stocks. There is absolutely no indication that the parties intended that plaintiffs be compensated for assisting defendant in purchasing or exchanging a business interest with Folding without regard to a time limitation. Under the circumstances we conclude that such an interpretation is unwarranted.

## III

Plaintiff next contends and in its complaint alleges that defendant waived the two-year time limitation in the agreement. It argues that under the parties' agreement it was obligated to perform only until August 18, 1976, and that it was induced to, and in fact did, work beyond August 18, 1978, to procure defendant's acquisition. Defendant maintains that count I fails to allege sufficient consideration for the alleged modification of the written agreement.

Parties to a contract may waive delays in performance by conduct which indicates an intention to regard the contract as still in force and effect. (*Kitsos v. Terry's Chrysler-Plymouth, Inc.* (1979), 70 Ill. App. 3d 728, 388 N.E.2d 1054; *Kubinski & Sons, Inc. v. Dockside Development Corp.* (1975), 33 Ill. App. 3d 1015, 339 N.E.2d 529, 12 Ill. L. & Prac. *Contracts* §§408 and 412 (1955); see also *Arthur Rubloff & Co. v. COMCO Corp.* (1978), 63 Ill. App. 3d 362, 380 N.E.2d 15.) Waiver is often demonstrated by conduct indicating that strict compliance with the provision of a conduct will not be required. (*Lempera v. Karner* (1979), 79 Ill. App. 3d 221, 398 N.E.2d 224.) Where the time fixed by the contract for performance is permitted to pass, both parties concurring, the time of performance thereafter becomes indefinite, and one party cannot rescind until full notice and a reasonable time for performance is given. (12 Ill. L. & Prac. *Contracts* §412, at 564 (1955).) Furthermore, new consideration is not necessary for a party to waive a provision in a contract. (*McQueeny v. Daily* (1957), 14 Ill. App. 2d 477, 144 N.E.2d 805.) Although the question as to what constitutes a waiver is a question of law, whether such facts exist in any given case is a question of fact to be determined by a jury. *Aetna Life Insurance Co. v. Sanford* (1902), 200 Ill. 126, 65 N.E. 661; *Stewart v. Meyers* (7th Cir. 1965), 353 F.2d 691.

Count I alleges that on April 4, 1978, prior to the expiration of its employment contract plaintiff counselled defendant that it should not recommence negotiations with Folding for six months. At that time defendant requested and directed plaintiff to continue its performance of procuring the acquisition of Folding regardless of the time limitation within aforesaid agreement. Pursuant to defendant's requests, direction, acts and conduct, plaintiff was induced to continue performance pursuant to their original agreement. Thereafter plaintiff maintained contact with Folding on defendant's behalf from April through October 1978. For the

purpose of a motion to dismiss, these facts and the reasonable inferences to be drawn therefrom are taken as true. (*Giers v. Anten* (1978), 68 Ill. App. 3d 535, 386 N.E.2d 82.) As such, the present situation is analogous to *Arthur Rubloff & Co. v. COMCO Corp.* There plaintiff and defendant entered into a real estate leasing commission agreement. Pursuant to the agreement, a lease had to be signed by the prospective lessee within 90 days for plaintiff to earn a commission. Although the lease was not signed within the 90 days and the contract had expired, the defendant continued negotiations with the prospective lessee, who had been procured by the plaintiff. That court concluded that defendant's own conduct constituted a waiver of the time limitation fixed by the parties' contract. Noting that the policy of the law is to protect a broker who has been employed or authorized to act and who, in good faith has so acted, *Arthur Rubloff & Co. v. COMCO Corp.* held:

> "* * * where the owner accepts the services of the broker and continues, without interruption, to negotiate with the lessee produced by the broker, and finally concludes a lease with the same lessee, even though the lease is not formally signed by the lessor and lessee within the time set forth in the memorandum, the lessor should not escape the payment of a commission, * * *." 63 Ill. App. 3d 362, 369, 380 N.E.2d 15, 20.

■ In the instant case, defendant's request that plaintiff continue performance of its contract regardless of the time limitation coupled with plaintiff's continued performance pursuant to the original agreement beyond August 18, 1978, is sufficient to support a claim for waiver of the time limitation. Accordingly, the trial court erred in dismissing count I of plaintiff's amended complaint for failure to state a cause of action.

### IV

Plaintiff next contends that count II of its amended complaint states a cause of action for breach of an oral contract. It argues that count II alleges an oral contract consisting of an exchange of defendant's promise to pay plaintiff a commission for plaintiff's actual rendering of services incident to defendant's acquisition of Folding. Plaintiff submits that its actual rendition of services created the acceptance and formed the contract requiring defendant to pay it the commission. Defendant argues that plaintiff's "best efforts" promise was nothing more than a promise to do what it is already obligated to do under the written contract and that, therefore, this consideration is insufficient to support the alleged oral agreement. *Moehling v. W. E. O'Neil Construction Co.* (1960), 20 Ill. 2d 255, 170 N.E.2d 100; *Macks v. Macks* (1946), 329 Ill. App. 144, 67 N.E.2d 505.

■ The parties' original contract dated August 19, 1976, recites that

plaintiff is engaged in the business of acting as a finder for the purpose of introducing persons, firms and corporations desirous of promoting a commercial transaction involving the sale, purchase or exchange of a business and that defendant is desirous of being introduced to Folding. The contract further provided in the event plaintiff introduces Folding to defendant and defendant concludes an agreement relating to a purchase or exchange within two years, plaintiff should be paid compensation. Count II alleges a new verbal agreement in which defendant agreed to pay plaintiff the same commission provided in the original contract if plaintiff would use its "best efforts to effectuate and procure" the acquisition of Folding by defendant. Thereafter, plaintiff maintained contact with Folding on defendant's behalf from April through October 1978. During the same period plaintiff also maintained contact with defendant. On October 19, 1978, pursuant to numerous conversations between plaintiff and Folding, a meeting was had between defendant and Folding during which negotiations for the acquisition of Folding by defendant were recommenced. The acquisition was later concluded on December 14, 1978.

A finder is defined as an intermediary who contracts to find, introduce and bring together the parties to a business opportunity, leaving the ultimate negotiations and consummation of the business transaction to the principal. (*Ruskin v. Rodgers* (1979), 79 Ill. App. 3d 941, 960, 399 N.E.2d 623, 637; *Kilbane v. Dyas* (1975), 33 Ill. App. 3d 439, 440, 337 N.E.2d 217, 219; Annot., 24 A.L.R.3d 1160, 1164 (1969).) A finder is distinguishable from a broker in that the former is not required to perform the duties of a broker in negotiating the contract. (*Modern Tackle Co. v. Bradley Industries, Inc.* (1973), 11 Ill. App. 3d 502, 507, 297 N.E.2d 688, 692; see also *Anderson v. Gewecke* (1976), 36 Ill. App. 3d 170, 343 N.E.2d 673.) Nevertheless, to earn a commission, a finder must accomplish the purpose for which his services were engaged and establish that the services were the procuring cause of the transaction. *Modern Tackle Co. v. Bradley Industries, Inc.*

The parties' original contract dated August 19, 1976, expressly provides that plaintiff was entitled to a commission if it successfully introduced defendant to Folding and an agreement for Folding's acquisition was concluded within two years. The August 19, 1976, contract specifically stated that plaintiff was not acting as a broker, defendant's agent or otherwise acting in a fiduciary capacity. After successfully introducing defendant to Folding, except for the time restraint, the contract did not require plaintiff to perform any other services to earn its commission. On April 4, 1978, the parties entered into a new verbal agreement in which plaintiff would use "its best efforts to effectuate and procure the acquisition of Folding by defendant." This statement plainly indicates

that the parties contemplated that plaintiff would perform in the new agreement other services in addition to its already completed obligation to introduce defendant to Folding. This language also suggests that plaintiff would undertake to act as mediator, if necessary, in the preliminary steps necessary to resume negotiations between defendant and Folding. Pursuant to this oral agreement of April 4, 1978, plaintiff maintained contact with both defendant and Folding. After numerous conversations with Folding, there was a meeting between Folding and defendant during which negotiations for the acquisition of Folding by defendant were resumed.

Plaintiff's promise to use its best efforts to effectuate and procure the acquisition of Folding by defendant is sufficient to support the alleged contract modification.[1] Accordingly, the trial court erred in dismissing count II of plaintiff's amended complaint for failure to state a cause of action.

V

Plaintiff finally contends that notwithstanding its expressed contract, it is entitled to recover under count III upon the *quantum meruit.* Defendant maintains that plaintiff cannot use an implied contract theory to avoid the limitation contained in the written agreement. Plaintiff replies that count III states a claim in *quantum meruit* separate and distinct from the claim in count I in that count III is not based upon the written agreement. Plaintiff argues that although it cannot recover under both count I and count III, it is not barred from pleading these counts alternatively.

Defendant correctly maintains that where a written contract is in effect, the parties are bound thereby and the time limit therein stipulated controls so that plaintiff cannot escape, on a theory of implied contract, the provision of the limitation. (*Smart & Golee, Inc. v. Delany* (1965), 65 Ill. App. 2d 60, 213 N.E.2d 27.) Nevertheless, a plaintiff may recover under *quantum meruit* where he fails to establish the express contract but does show that services were rendered. (*Edens View Realty & Investment, Inc. v. Heritage Enterprises, Inc.* (1980), 87 Ill. App. 3d 480, 408 N.E.2d 1069; *Slater v. Jacobs* (1977), 56 Ill. App. 3d 636, 371 N.E.2d 1054.) Furthermore, the Civil Practice Act provides that when a party is in doubt

---

[1] Even assuming that plaintiff's promise to use its "best efforts to effectuate and procure" the acquisition of Folding is nothing more than it was bound to do under the original contract, defendant continued to accept plaintiff's services beyond the two-year limitation set forth in the August 19, 1976, contract. This continued assistance culminated in defendant's eventual acquisition of Folding. Since defendant continued to accept plaintiff's services and benefitted thereby, it should not now be heard to complain that consideration was lacking for the oral contract. *Terminal Freezers, Inc. v. Roberts Frozen Foods, Inc.* (1976), 41 Ill. App. 3d 981, 354 N.E.2d 904.

as to which of two or more statements of fact is true, he may, regardless of consistency, state them in the alternative or hypothetically in the same or different counts or defenses. A bad alternative does not affect a good one. Ill. Rev. Stat. 1977, ch. 110, par. 43(2).

The defendant in *Swift & Co. v. Dollahan* (1954), 2 Ill. App. 2d 574, 120 N.E.2d 249, presented the identical argument. There the plaintiff sought, in two separate counts, to recover on a note and to recover on a loan which was in the same amount. Similarly, no reference was made in count II to the alleged note attached to the complaint as an exhibit and incorporated in count I. Nevertheless, the defendants there asserted in their motion and on appeal that count II, as well as count I, was predicated upon the instrument attached as an exhibit to count I. The court held that count II did not refer to the exhibit and was on its face a statement of a claim separate and distinct from that stated in count I, and was complete in itself without reference to the exhibit attached and limited to count I and that therefore defendant's motion to dismiss was properly denied.

■■ Furthermore, defendant has throughout these proceedings maintained that the parties' written contract specifically provided that acquisition of Folding had to occur within a two-year period, namely, by August 18, 1978. Since acquisition did not occur until after August 18, 1978, defendant argues that plaintiff is not entitled to compensation. If plaintiff was not entitled to compensation after August 18, 1978, it follows that its obligation to perform services on behalf of defendant would also cease on that date. Nevertheless, defendant permitted plaintiff to continue to perform services in order to effect and procure the acquisition of Folding through October 1978. Since the basis for recovery under *quantum meruit* is defendant's receipt of a benefit from plaintiff which would be unjust for defendant to retain without paying for it (*Edens View Realty & Investment, Inc. v. Heritage Enterprises, Inc.* (1980), 87 Ill. App. 3d 480, 408 N.E.2d 1069), plaintiff should be entitled to receive the reasonable value of its services performed after August 18, 1978.

Each of the counts is sufficient to state a cause of action. Accordingly, the order of the trial court dismissing the amended complaint with prejudice is reversed and remanded for further proceedings.

Reversed and remanded.

SULLIVAN, P. J., and WILSON, J., concur.